UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA

Case No.:

CHT HOLDINGS, LLC,

       Plaintiff,

v.

TELEFONICA INTERNATIONAL
WHOLESALE SERVICES
AMERICA, S.A.,

       Defendant.

_____/

## COMPLAINT

Plaintiff CHT Holdings, LLC ("CHT"), by and through undersigned counsel and pursuant to the Federal Rules of Civil Procedure, sues Telxius Cable America S.A. (f/k/a Telefonica International Wholesale Services America, S.A.) ("Telxius"), and states as follows:

## NATURE OF ACTION

This is a complaint for damages arising from the Telxius' breach of contract in connection with the parties' efforts to develop international telecommunications facilities connecting the continental United States, Puerto Rico, the Dominican Republic and Haiti. CHT is the purchaser and Telxius is the seller of certain telecommunications assets that Telxius failed to deliver to CHT as agreed.

## PARTIES

1.    **Plaintiff** CHT Holdings LLC ("CHT"), is a limited liability company organized under the laws of Delaware with its principal place of business in 1820 N Corporate Lakes Blvd, Ste. 101, Weston, Florida, 33326. CHT has two members. One member is an individual who is

EhrensteinSager.com   2800 Ponce De Leon Blvd.   Suite 1400   Coral Gables, Florida 33134   305.503.5930

a resident of the Dominican Republic. The other member is a Delaware corporation with its principal place of business in North Carolina.

2.      CHT is in the business of delivering international telecommunication voice services to customers around the globe. As relevant here, CHT provides services to customers in Puerto Rico and Dominican Republic, directly and through its affiliates.

3.      **Defendant** Telxius Cable America S.A. (f/k/a Telefonica International Wholesale Services America S.A.) ("Telxius"), is a corporation organized under the laws of Uruguay with its principal place of business in Av. Luis A. de Herrera 1248, piso 4, Montevideo, Uruguay.

4.      Telxius is the infrastructure affiliate of Telefónica, one of the largest telecommunications providers in the world by number of customers. Telxius trades under the same name ("Telxius"), maintains more than thirty thousand sites across Europe and the Americas, and operates a network of 87,000 km of high-capacity fiber optic submarine cable. Among other assets, Telxius operates the "Brusa" and "SAm-1" cable networks.

## JURISDICTION AND VENUE

5.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Telxius transacts business in this district through its affiliate Telxius Cable USA, Inc., a Florida corporation, and because CHT and Telxius have agreed to submit to the exclusive jurisdiction of the Florida state courts and the United States District Court for the Southern District of Florida for the resolution of any disputes arising under their agreement.

2

## FACTS

### A. Telxius Builds and Sells Submarine Cable Networks

7. Telxius is in the business of building and selling capacity on submarine telecommunications cable networks with strategic landing points across the Atlantic and Pacific coasts of Latin America and select locations in the United States and Europe.

8. Telxius's customers include local telecommunications and data providers with facilities in locations accessible to a Telxius network connection point. By interconnecting with these local networks, Telxius is able to provide capacity for telecommunication traffic to flow over a Telxius backbone for delivery to its destination.

9. Two Telxius networks, "SAm-1" and "Brusa," respectively, have interconnection points in the United States and specified locations in Latin America.

10. SAm-1 is a pre-existing network serving points throughout South and Central America with US connection points in San Juan, Puerto Rico and Boca Raton, Florida (the name "SAm-1" is an abbreviation of "South America-1"). The primary SAm-1 network has been in service for well over a decade, and for all times relevant to this dispute.

11. Brusa, by contrast, is a newer, high-speed cable network designed to provide a direct connection between Brazil and the United States (the name "BRUSA" is a compound abbreviation of "BRazil" and "USA")—specifically, to a domestic landing in Virginia.

12. Both SAm-1 and Brusa are subsea fiber optic cable systems designed to carry telecommunications and data traffic between interconnection points. SAm-1 comprises two fiber pairs of optical cable, and Brusa comprises eight fiber pairs of optical cable. The Brusa cable is a newer generation, lower latency cable than employed in SAm-1. Telxius advertises the capacity of SAm-1 at 20 Tbps (terabits per second), and Brusa at 160 Tbps.

3

**B.**    ***Telxius Sought to Extend its Network to the Dominican Republic***

13.    As early as 2013, Telxius began marketing an opportunity for an extension of SAm-1 to the Dominican Republic. At the time, the SAm-1 network existed but did not include any fiber extensions to the Dominican Republic. The Brusa network did not yet exist.

14.    The goal of the venture was to provide a direct connection from the Dominican Republic to Puerto Rico, where the new extension could interconnect with the innovative Brusa cable that Telxius was planning to build for high-speed and high-capacity transmission to the United States.

15.    The primary value of providing a direct connection from the Dominican Republic to Puerto Rico was that with it came the ability to directly connect the Dominican Republic to the continental United States through Brusa, a selling point that distinguished the venture from existing telecommunications network facilities.

16.    In 2017, Telxius approached CHT to discuss this project, and negotiate a contract for the extension of its networks to the Dominican Republic.

**C.**    ***Telxius-and CHT Entered into a Contract***

17.    In August 2017, Telxius and CHT signed a Memorandum of Understanding ("MOU") reflecting their agreement to develop the extensions. A true and correct copy of the Memorandum of Understanding ("MOU") is attached hereto as **EXHIBIT A**.

18.    Subsequently, on December 14, 2017, Telxius and CHT further memorialized their agreement to extend the Network to the Dominican Republic in a service agreement (the "IRU Agreement"). A true and correct copy of the IRU Agreement is attached hereto as **EXHIBIT B**.

4

19.      In general terms, CHT agreed to purchase and fund construction of the SAm-1 extension, and purchase a portion of the Brusa spectrum accessible in San Juan.

20.      In relevant part, the IRU Agreement provides that Telxius would sell and CHT would purchase the following, for a term of not less than eighteen (18) years, beginning upon the later delivery of:

- **SAm-1:** the entire two-pair fiber optic cable between Punta Cana (DR) and San Juan (PR); and

- **Brusa:** spectrum equivalent to a half pair of fiber and, if necessary, any additional spectrum to reach a minimum of 9.5 Tbps.

21.      CHT's contemplated ownership interest in the respective assets is an "indefeasible right of use" ("IRU"), which is a form of long-term exclusive right of use (similar to a lease) but in which the entirety of the encumbered asset is beneficially owned—during the IRU term—by the purchaser.

22.      Although both assets were purchased as IRUs, the nature of the assets differed between the two networks.

23.      In particular, with respect to SAm-1, CHT purchased the entirety of the two fiber pairs. The Dominican extension was designed exclusively for the purpose of supporting direct high- capacity telecommunications services between the Dominican Republic and continental United States, through Puerto Rico. This project required the Telxius to deliver to CHT (and receive from CHT) data and other telecommunications traffic within the Dominican Republic. The Dominican Republic requires such data and telecommunications activity to be conducted by a licensed Dominican entity.

EhrensteinSager.com   2800 Ponce De Leon Blvd.   Suite 1400   Coral Gables, Florida 33134   305.503.5930

24.       In contrast, with respect to Brusa, CHT did not purchase any single identifiable fiber or fiber pair; rather, CHT purchased roughly 6.25% (1/16th) of the spectrum achieved from the eight fiber pairs that make up the network. In the language of the IRU Agreement, Telxius sold CHT "the spectrum equivalent to half fiber pair of BRUSA and, if necessary, any additional spectrum to reach a minimum of 9.5 Tbps in BRUSA . . . ."

25.       By selling "spectrum" rather than any particular level of "capacity," the parties were agreeing that CHT was acquiring an asset, rather than merely using an asset that remained owned by Telxius. As the parties clarified on the eve of the IRU Agreement, "[I]f Telxius sells capacity in DR and Haiti it will buy it from CHT until capacity is exhausted during the life of the agreement."  Telxius was explicit that "CHT is the owner of the assets."

26.       For all intents and purposes, CHT purchased its interests (either the full interest in the Dominican extension or the spectrum portion of the PR extension) for the life of the respective networks. The stated term of both IRUs was eighteen years beginning upon the later activation of Brusa and SAm-1, but "the IRU Service Term will be extended for the Useful Economic Life of the cable's Useful Economic Life if it exceed[s] 18 years."

27.        At the time of the parties' MOU, Telxius estimated that both networks would be up and running within twelve months. In the language of the MOU and the IRU Agreement, the parties softened the precision of that deliverable to "3Q 2018," (i.e., sometime in July, August, or September 2018).

28.       Because construction of the SAm-1 network was not going to be operational until the third quarter of 2018, CHT demanded and Telxius agreed to provide interim capacity of 30 Gbps (0.03 Tbps) until the activation date of SAm-1.

EhrensteinSager.com     2800 Ponce De Leon Blvd.     Suite 1400     Coral Gables, Florida 33134     305.503.5930

29.     In exchange for timely delivery by Telxius of both fully-functional assets and the interim capacity specified above, CHT agreed to pay six million dollars ($6,000,000) within the first thirty days following execution of the IRU Agreement, and another twenty- five million dollars ($25,000,000) on specified dates after activation of the later of the two networks and delivery of service to the purchaser.

30.     Under the IRU Agreement, Telxius was solely responsible for providing the Building which would house the connection between the Telxius cable and CHT's local network. This building is called a cable landing station or "CLS". In addition, Telxius was responsible for providing HVAC, power, physical security, and any necessary rights-of-way, occupancy permits, and other regulatory approvals.

31.     Telxius also was responsible for all testing of Brusa and SAm-1 to assure full functionality prior to delivery.

32.     In 2017, the Telxius alerted CHT that they had selected a site in the Cap-Cana area of Punta Cana, Dominican Republic as the CLS. In March 2018, the Telxius changed the CLS to an alternative—inadequate—location in the Cabeza de Toro area of Punta Cana—a hotel storage closet.

### D.     _Telxius Failed to Perform_

33.     CHT paid all amounts due, but Telxius has not delivered **_any_** of the promised IRUs—in Brusa or SAm-1, nor any of the promised interim capacity.

34.     The parties contracted based on Telxius's projection that it would complete construction by the third quarter of 2018.

7

35.     Yet as 2018 progressed, Telxius began to delay, and was never able to provide CHT, its financing partners, or any CHT prospective customers, with reasonable assurances that the purchased assets would be delivered as promised.

36.     Telxius calculated at that time (about three months after the 180-day deadline by which Telxius was required to provide interim service), that the 30 Gbps of interim capacity not delivered during the prior three months was valued at approximately $2.5 million for the three-month period, or almost $28,000 per Gb per month.

37.     Despite the various proposals, the parties' negotiations ended without any modification or amendment being agreed, finalized, or executed.

38.     Telxius still did not complete construction, nor land its cable, nor test its network, nor activate any of the contracted assets, nor provide interim capacity by the end of the fourth quarter of 2018.

39.     To this day, Telxius has not yet performed.

40.     By June 2019, the duration of Telxius's non-performance had exceeded by 100% the entire estimated timeline for construction and delivery of the two networks. At that point, in mitigation of its already incurred and ongoing damages and in furtherance of efforts to enable some measure of performance under the IRU Agreement, CHT incurred the additional expense of obtaining and providing to Telxius a building within which Telxius would construct the cable landing station in the Dominican Republic, which Telxius had not been able to deliver.

41.     The parties entered an 18-year lease under which Telxius agreed to rent the building from a CHT affiliate for a fixed amount each month, beginning after Telxius connected, tested, certified, and activated the SAm-1 fiber at the CLS, and delivered service to CHT.

42.     As the project continued through the fall of 2019, the parties were unable to

8

reach agreement on an appropriate testing and delivery protocol reflecting objective measures for Telxius to demonstrate adequate functionality of the cable it was planning to deliver to CHT.

43.     Telxius' many delays have led to the devaluation of purchased assets.

44.     In this same period, Telxius stated an intent to complete the cable connection and activate service on the SAm-1 network without demonstrating adequacy of the fiber and without acknowledging the material economic impacts of Telxius's many failures.

45.     Because CHT purchased the entirety of the two fiber pairs of SAm-1 between San Juan and Punta Cana, no other telecommunications carrier is able to utilize that particular route without contracting directly with, or through, CHT.

46.     Throughout the spring and summer of 2020, Telxius continued to state an intent to complete the cable connection and activate service on the SAm-1 network without demonstrating adequacy of the fiber (and again, without acknowledging the material economic impacts of Telxius's failures). Subject to its rights to recover the significant losses to CHT from Telxius's nonperformance (whether in setoff or standalone claims), CHT remained ready, willing, and able to accept delivery of the fully tested and functional fiber and put the network into service.

47.     CHT has been damaged by Telxius's delays and failures to perform.

48.     All conditions precedent to bringing this action have been performed, excused or waived.

49.     CHT has retained the undersigned counsel for representation in this matter an is obligated to pay a reasonable fee therefore.

9

## COUNT ONE
## (Breach of Contract - Damages)

50.      CHT incorporates the allegations of paragraph 1 through 49 as if fully set forth herein.

51.      Telxius sold, and CHT purchased, the two fiber pairs of SAm-1 and spectrum equivalent to a half fiber pair of Brusa, for delivery and activation in the third quarter of 2018.

52.      Telxius agreed to deliver interim capacity of 30 Gbps in Telxius's fiber networks, through and including the date of activation of SAm-1.

53.      CHT has paid all sums and done all actions required under the parties' agreement.

54.      Telxius materially breached the parties' agreement by failing to deliver to CHT and activate both Brusa and SAm-1 networks by the third quarter of 2018, or within a reasonable time thereafter, and by failing to provide CHT  interim capacity of 30 Gbps.

55.      Telxius's breaches damaged CHT.

56.      Subject to its rights to recover the significant losses to CHT from Telxius's nonperformance (whether in setoff or standalone claims), CHT remains ready, willing, and able to accept delivery of the fiber and put the networks into service.

WHEREFORE, Plaintiff, CHT Holdings, LLC, demands judgment against Defendant, Telxius Cable America S.A. for damages, costs, attorney's fees, and such other and further relief as this Court deems just and proper.

## COUNT TWO
## (Breach of Contract – Setoff and
## Recoupment)

57.      CHT incorporates the allegations of paragraph 1 through 49 as if fully set forth herein.

EhrensteinSager.com      2800 Ponce De Leon Blvd.      Suite 1400      Coral Gables, Florida 33134      305.503.5930

58.     Telxius sold, and CHT purchased, the two fiber pairs of SAm-1 and spectrum equivalent to a half fiber pair of Brusa, for delivery and activation in 3Q 2018.

59.     As part of the parties' agreement, Telxius agreed to deliver interim capacity of 30 Gbps in Telxius's fiber networks, through and including the date of activation of SAm-1.

60.     CHT has paid all sums and done all actions required under the parties' agreement.

61.     Telxius has not delivered and activated both Brusa and SAm-1 networks and has not delivered interim capacity of 30 Gbps to CHT.

62.     Telxius's failures constitute material breaches of the IRU Agreement sufficient to excuse CHT from further performance should it so elect, including with respect to payment of additional sums calculated at the time of contracting on the basis of performance by Telxius that has not occurred.

63.     As a result of injuries caused by Telxius's breaches, CHT is entitled to set off all damages incurred, including the diminution in value of the assets purchased, as against any further amounts otherwise due and payable from CHT to Telxius. CHT specifically is entitled to Telxius's future performance under the IRU Agreement, and to set off its damages thereunder.

64.     Subject to its rights to recover the significant losses to CHT from Telxius's nonperformance (whether in setoff or standalone claims), CHT remains ready, willing, and able to accept delivery of the fiber and put the networks into service.

WHEREFORE, Plaintiff, CHT Holdings, LLC, demands judgment against Defendant, Telxius Cable America S.A. for damages to be setoff and/or recouped from any amount which may be found to be due to Telxius Cable America S.A., and its costs, attorney's fees, and such other and further relief as this Court deems just and proper.

EhrensteinSager.com     2800 Ponce De Leon Blvd.     Suite 1400     Coral Gables, Florida 33134     305.503.5930

## COUNT THREE
### (Unjust Enrichment)

65.      CHT incorporates the allegations of paragraph 1 through 49 as if fully set forth

herein.

66.      In the alternative to CHT's contract claims, insofar as the IRU Agreement is

determined to be invalid or fails to address fully the relationship between the parties, then CHT

is entitled to recover from Telxius the value of the benefit conferred on it by CHT.

67.      CHT has advanced six million dollars ($6,000,000) in contemplation of acquiring

assets that Telxius failed to timely deliver (and as of this date, has not delivered at all).

68.      The SAm-1 (Dominican) extension was designed specifically for the purpose of

creating the exclusive rights to provide high-speed high-capacity service to the Dominican

Republic through Puerto Rico (using the Brusa connection to the continental United States) that

CHT purchased.

69.      Telxius has used CHT's money to construct the SAm-1 extension (and may have

used those funds to complete the PR extension of Brusa), thereby increasing the value of Telxius's

fiber optic network.

70.      Telxius has knowingly accepted the benefit of CHT's efforts, know-how, and

money, as well as access to the CLS in Punta Cana, under circumstances in which it is inequitable

for Telxius to retain those benefits without compensating CHT therefor.

WHEREFORE, Plaintiff, CHT Holdings, LLC, demands judgment against Defendant,

Telxius Cable America S.A. for damages, costs, attorney's fees, and such other and further relief

as this Court deems just and proper.

EhrensteinSager.com     2800 Ponce De Leon Blvd.     Suite 1400     Coral Gables, Florida 33134     305.503.5930